## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ILLINOIS

SHERRILL SABO,

      Plaintiff,

v.

DENNIS TECHNOLOGIES, LLC, and
MICHAEL DENNIS,

      Defendants/Third-Party Plaintiffs,

v.

SPRINT NEXTEL CORPORATION,
f/k/a United Utilities, Inc., f/k/a Sprint Corporation, and
NEXTEL RETAIL STORES, LLC,

      Third-Party Defendants.           No. 07-cv-283-DRH

## MEMORANDUM and ORDER

**HERNDON, District Judge:**

      This matter is before the Court on the motion for remand to state court brought by defendants and third-party plaintiffs Dennis Technologies, LLC, and Michael Dennis (Doc. 13).[1] For the following reasons, the motion is **GRANTED**.

### I. Introduction

      On April 3, 2007, plaintiff Sherrill Sabo, an employee of the Dennis defendants, brought suit against her employers in the Circuit Court of the

---

1.  Hereinafter, the Court will refer to Dennis Technologies, LLC, and Michael Dennis, whenever possible, as "the Dennis defendants."

Third Judicial Circuit, Madison County, Illinois, alleging that they are indebted to her for an amount in excess of $50,000.  *See* Doc. 2, Ex. A.  The same day, the Dennis defendants filed an answer and impleaded as third-party defendants Sprint Nextel Corporation and Nextel Retail Stores, LLC.  *See id.*, Ex. B; Doc. 13, Ex. A ¶ 19.[2]  The Dennis defendants alleged claims for breach of contract, intentional interference with contractual relations, defamation, and injunctive relief in connection with attempts by the Sprint defendants to terminate an agreement authorizing the Dennis defendants to act in the capacity of a retail sales representative of telephones for the Sprint defendants.  *See* Doc. 2, Ex. B at 3-7.

Also on April 3, 2007, the Dennis defendants filed a motion for a preliminary injunction against the Sprint defendants, and scheduled a hearing on the motion for April 5, 2007.  *See* Doc. 2, Ex. C; Doc. 4 ¶ 22; Doc. 13, Ex. A ¶ 20.  Counsel for the Dennis defendants gave notice of the motion and hearing thereon to the Sprint defendants via a message to an e-mail account for shareholder relations on the website of Sprint Nextel Corporation and a telephone message to an area vice-president of the company.  *See* Doc. 4 ¶ 22; Doc. 13, Ex. A ¶¶ 20-21.[3]  On April 5, 2007, after a hearing at which the Sprint defendants were unrepresented, the Madison County court entered a preliminary injunction prohibiting termination of the retail sales representative agreement between the Sprint defendants and the Dennis defendants.  *See* Doc. 2, Ex. D.  On April 10, 2007, the Sprint defendants were served with the Dennis defendants' third-

---

2.    Hereinafter, the Court will refer to Sprint Nextel Corporation and Nextel Retail Stores, LLC, whenever possible, as "the Sprint defendants."

3.    An affidavit submitted to the Court by Michael Dennis also asserts that notice of the motion and hearing was given via voice-mail message to in-house counsel for Sprint Nextel Corporation. *See* Doc. 13, Ex. A ¶ 22.  However, the Court has reason to doubt that this assertion is made on personal knowledge.

party complaint. *See* Doc. 2 ¶ 4.

On April 17, 2007, the Sprint defendants removed the case to this Court, asserting federal subject matter jurisdiction in diversity. They have moved the Court to vacate the state-court injunction and to order the parties to the third-party complaint to proceed to arbitration pursuant to the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq*. *See* Doc. 4, 5. The Dennis defendants, as discussed, have requested remand of this case to state court for lack of subject matter jurisdiction, prompting the Sprint defendants to respond with a motion for leave to conduct discovery as to the existence of federal subject matter jurisdiction in this case. *See* Doc. 15. In addition to requesting jurisdictional discovery, the Sprint defendants have moved also for, somewhat paradoxically, an expedited ruling as to the Dennis defendants' pending motion for remand. *See* Doc. 18. In support of their request for an expedited ruling on subject matter jurisdiction, the Sprint defendants cite the harm they are suffering as a result of the state-court injunction, which has remained in place pending a ruling by the Court on the Dennis defendants' motion for remand. *See id*. Counsel for the Dennis defendants concur in the Sprint defendants' request for an expedited ruling on remand, citing the need to procure a judgment of contempt against the Sprint defendants in state court for violating the state court's injunction. *See* Doc. 19. Having reviewed carefully the submissions of the parties concerning subject matter jurisdiction, the Court now is prepared to rule.

## II. <u>Discussion</u>

Under 28 U.S.C. § 1441, "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). A federal court may exercise jurisdiction

in diversity if all parties to an action are of completely diverse citizenship, that is, no plaintiff is a citizen of the same state as any defendant, and an amount in excess of $75,000, exclusive of interest and costs, is in controversy.  *See* 28 U.S.C. § 1332; *Rubel v. Pfizer Inc.*, 361 F.3d 1016, 1017 (7th Cir. 2004); *Ford v. Keck*, No. 06-cv-667-DRH, 2007 WL 1022003, at *1 (S.D. Ill. Apr. 2, 2007); *Johns v. Johns Mitchell*, No. 06-924-GPM, 2007 WL 496391, at *2 (S.D. Ill. Feb. 13, 2007); *Cassens v. Cassens*, 430 F. Supp. 2d 830, 832-33 (S.D. Ill. 2006).

A party seeking removal has the burden of establishing federal jurisdiction.  *See In re Brand Name Prescription Drugs Antitrust Litig.*, 123 F.3d 599, 607 (7th Cir. 1997); *Brooks v. Merck & Co.*, 443 F. Supp. 2d 994, 998 (S.D. Ill. 2006); *Fiore v. First Am. Title Ins. Co.*, No. 05-CV-474-DRH, 2005 WL 3434074, at *2 (S.D. Ill. Dec. 13, 2005).  "'Courts should interpret the removal statute narrowly and presume that the plaintiff may choose his or her forum.'  Put another way, there is a strong presumption in favor of remand."  *Fuller v. BNSF Ry. Co.*, 472 F. Supp. 2d 1088, 1091 (S.D. Ill. 2007) (quoting *Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993)).  *See also Potter v. Janus Inv. Fund*, 483 F. Supp. 2d 692, 695 (S.D. Ill. 2007); *Kuntz v. Illinois Cent. R.R. Co.*, 469 F. Supp. 2d 586, 589 (S.D. Ill. 2007).  All doubts about the propriety of removal are to be resolved in favor of remand.  *See Disher v. Citigroup Global Mkts., Inc.*, Civil No. 04-308-GPM, 2007 WL 1231632, at *7 (S.D. Ill. Apr. 24, 2007); *Morthland v. BRP US, Inc.*, No. 06-CV-01038-DRH, 2007 WL 853986, at *1 (S.D. Ill. Mar. 16, 2007); *Littleton v. Shelter Ins. Co.*, No. 99-912-GPM, 2000 WL 356408, at *1 (S.D. Ill. Mar. 9, 2000).

In this case the record reflects that Sabo is an Illinois citizen, as is Michael Dennis.  *See* Doc. 2 ¶ 5, ¶ 6.  The record reflects also that Dennis Technologies, LLC, is a limited liability company organized under Illinois law of which Michael Dennis and Melinda Dennis,

Illinois citizens, are the only members, *see id*. ¶ 7, so that for diversity purposes, Dennis Technologies, LLC, is an Illinois citizen. *See Lyerla v. Amco Ins. Co.*, 461 F. Supp. 2d 834, 837 n.1 (S.D. Ill. 2006) (citing *Belleville Catering Co. v. Champaign Mkt. Place, L.L.C.*, 350 F.3d 691, 692 (7th Cir. 2003)) (the citizenship of an "unincorporated association, including a limited liability company, . . . [is] the citizenship of all members of such . . . [an] association."); *LaRoe v. Cassens & Sons, Inc*., 472 F. Supp. 2d 1039, 1040 (S.D. Ill. 2006) ("The citizenship of a limited liability company . . . for diversity purposes is the citizenship of each of its members."). Thus, complete diversity of citizenship does not exist in this case.[4]

The Sprint defendants contend that there is complete diversity for three reasons. First, they argue that because they are third-party defendants, they are "defendants" entitled to remove this case within the meaning of 28 U.S.C. § 1441(a). Second, they argue that Sabo's claims against the Dennis defendants have been improperly joined with the latter's third-party claims against the Sprint defendants. If the third-party claims are severed from Sabo's claims against the Dennis defendants, complete diversity of citizenship exists because Michael Dennis and Dennis Technologies, LLC, are Illinois citizens, as discussed, while Sprint Nextel Corporation is a citizen of Kansas and Virginia, and Nextel Retail Stores, LLC, is a citizen of Delaware and Virginia. *See*

---

4.   Additionally, an affidavit by Michael Dennis contests whether an amount in excess of $75,000, exclusive of interest and costs, is in controversy between Sabo and the Dennis defendants.  *See* Doc. 13, Ex. A ¶ 10.  Ordinarily, of course, a challenge to the amount in controversy puts a defendant seeking removal to its proof regarding the existence of subject matter jurisdiction.  *See Meridian Sec. Ins. Co. v. Sadowski*, 441 F.3d 536, 543 (7th Cir. 2006) (noting that, when material jurisdictional facts are put into controversy, this puts the burden on the party asserting the existence of federal subject matter jurisdiction to prove such facts by a preponderance of the evidence).  The Court is not inclined, however, to give weight to Dennis's affidavit on this point.  *See Ford*, 2007 WL 1022003, at *3.  In any event, because for the reasons discussed infra the Court concludes that complete diversity of citizenship does not exist in this case, the Court is not required to reach the question of whether the jurisdictional minimum amount for diversity purposes is satisfied.

Doc. 2 ¶ 8, ¶ 9. Finally, the Sprint defendants argue that complete diversity of citizenship exists because the joinder of Sabo's claims against the Dennis defendants with the latter's claims against the Sprint defendants is collusive in violation of 28 U.S.C. § 1359. The Court considers each of these arguments in turn.[5]

### A. Jurisdictional Discovery

As an initial matter, the Court addresses the request by the Sprint defendants for leave to conduct jurisdictional discovery in support of removal. The Court held recently that "post-removal discovery in support of a claim of [federal subject matter jurisdiction] is highly disfavored." *Hill v. Olin Corp.*, No. 07-CV-0054-DRH, 2007 WL 1431865, at *5 (S.D. Ill. May 14, 2007). As the Court stated in *Hill*, "a defendant should conduct discovery in support of removal in

---

5. The Court notes that on April 27, 2007, the Dennis defendants filed an amended third-party complaint joining some additional claims and parties. *See* Doc. 10. However, as this pleading was filed without leave of Court as required by Rule 14 of the Federal Rules of Civil Procedure, the Court has disregarded it. *See* Fed. R. Civ. P. 14(a) (a third-party plaintiff must obtain leave to file a third-party complaint on motion upon notice to all parties to the action if such a complaint is sought to be filed more than ten days after the third-party plaintiff served an answer to the original complaint in a case); *In re General Motors Corp. Dex-Cool*, No. Civ. MDL-03-1562-GPM, Civ. 05-10008-GPM, 2006 WL 2818773, at *5 (S.D. Ill. Sept. 27, 2006) (quoting *United States v. HealthSouth Corp.*, 332 F.3d 293, 295 (5th Cir. 2003)) ("In general, if an amendment that cannot be made as of right is served without obtaining the court's leave or the opposing party's consent, it is without legal effect and any new matter it contains will not be considered unless the amendment is resubmitted for the court's approval."). In any event, the citizenship of parties to a third-party claim is irrelevant to the existence of diversity jurisdiction. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 66 n.1 (1996); *Fidelity & Deposit Co. of Md. v. City of Sheboygan Falls*, 713 F.2d 1261, 1266 (7th Cir. 1983); *Evra Corp. v. Swiss Bank Corp.*, 673 F.2d 951, 959-60 (7th Cir. 1982); *Fields v. Jay Henges Enters., Inc.*, Civil No. 06-323-GPM, 2006 WL 1875457, at *2 n.1 (S.D. Ill. June 30, 2006). *See also* 14B Charles Alan Wright, Arthur R. Miller, Edward H. Cooper & Joan E. Steinman, *Federal Practice & Procedure* § 3723 (3d ed. 1998 & Supp. 2007) (explaining that "[i]t is the citizenship of the original parties that is determinative. Thus, diversity of citizenship only between a third-party plaintiff and a third-party defendant will not confer federal jurisdiction over a suit that is not otherwise removable; conversely, nor will a third-party's lack of diversity destroy federal subject matter jurisdiction for purposes of removal if it otherwise exists on the basis of the citizenship of or the claims between the original parties.") (collecting cases).

state court before removal, not after removal." *Id.* (citing *Garbie v. Chrysler Corp.*, 8 F. Supp. 2d 814, 821 (N.D. Ill. 1998)). Thus, post-removal discovery in support of a claim of federal subject matter jurisdiction should be allowed in "few" cases and then only on "a tight judicial tether." *Id.* (quoting *Smallwood v. Illinois Cent. R.R. Co.*, 385 F.3d 568, 573-74 (5th Cir. 2004)). "[W]hen a party invokes subject matter jurisdiction based on diversity of citizenship, that party must have a solid factual basis supported by evidence in order to assert that the parties are indeed diverse." *Savis, Inc. v. Warner Lambert, Inc.*, 967 F. Supp. 632, 641 (D.P.R. 1997). Accordingly, a court should not, in the exercise of its "broad discretion" regarding discovery matters, "allow the invoking party to utilize the Court's power to order discovery as a tool to fish for that solid factual basis." *Id. See also Westefer v. Snyder*, 472 F. Supp. 2d 1034, 1037 (S.D. Ill. 2006) (quoting *Dole v. Local 1942 Int'l Bhd. of Elec. Workers, AFL-CIO*, 870 F.2d 368, 371 (7th Cir. 1989)) ("District courts have broad discretion in matters relating to discovery.").

In general, post-removal discovery in support of a claim of federal subject matter jurisdiction means that non-removing parties are subjected to "the expense and delay" of discovery precisely at the time when a court's very power to adjudicate a case is "seriously questioned." *In re Gas Water Heater Prods. Liab. Litig.*, Civ. A. No. 96-2484, 1996 WL 537748, at *2 (E.D. La. Sept. 20, 1996) (denying a request to defer a ruling on a motion for remand to state court pending discovery as to subject matter jurisdiction). This runs counter to the settled principles governing the exercise of federal jurisdiction on removal. "Post-removal discovery disrupts the careful assignment of burdens and the delicate balance struck by the underlying rules [governing removal]. A district court should not insert itself into the fray by granting leave for the defendant to conduct discovery or by engaging in its own discovery." *Lowery v. Alabama Power Co.*, 483 F.3d 1184, 1218

(11th Cir. 2007).  "Doing so impermissibly lightens the defendant's burden of establishing jurisdiction.  A court should not participate in a one-sided subversion of the rules.  The proper course is remand." *Id*.

The removal statutes clearly contemplate that discovery in support of removal will be conducted in state court before removal, not after.  The "policy and purpose of Congress" underlying the procedural time limits on removal set out in 28 U.S.C. § 1446(b) is "to effect removals as early as possible and avoid unnecessary delay." *Buller Trucking Co. v. Owner Operator Indep. Driver Risk Retention Group, Inc.*, 461 F. Supp. 2d 768, 781 (S.D. Ill. 2006) (quoting *Gilardi v. Atchison, Topeka & Santa Fe Ry. Co.*, 189 F. Supp. 82, 85 (N.D. Ill. 1960)).  In cases filed in state court in which the existence of federal jurisdiction is doubtful, use of discovery in state court to establish the prerequisites for the exercise of federal jurisdiction before removal furthers the congressional goal of fostering judicial economy.  "[U]sing discovery methods [in state court] to ascertain whether jurisdictional requirements are met rather than immediately removing the case to federal court before being certain that all necessary proof is available promotes judicial efficiency and economy by preventing removal that is likely to be remanded and possibly by preventing removal altogether if it becomes clear that the jurisdictional requirements are not present." *Kirkland v. Morton's of Chicago*, No. C-96-2301 MHP, 1996 WL 532118, at *4 (N.D. Cal. Sept. 16, 1996).

Correspondingly, when discovery in state court yields evidence of federal subject matter jurisdiction in a case as to which the existence of such jurisdiction was ambiguous, the case may then be removed to state court.  *See* 28 U.S.C. § 1446(b) (providing that, where the initial pleading in a case does not show that the case is removable to federal court, a defendant may remove within thirty days of receipt of "other paper" showing that the case is removable); *Coleman v.*

*Southern Norfolk*, 734 F. Supp. 719, 721 & n.3 (E.D. La. 1990) (remanding a case on the grounds that the defendant failed to show that the requirements for the exercise of federal diversity jurisdiction were satisfied, but noting that if further discovery in the case in state court after remand showed that jurisdictional prerequisites were met, such discovery would constitute "other paper" authorizing removal within the meaning of Section 1446(b)).  In this case, the Sprint defendants have offered no persuasive reason why the discovery they seek could not have been conducted in state court before removal, and the Court's careful examination of the record shows unmistakably that the requested discovery would be futile.  Accordingly, the Sprint defendants' request for jurisdictional discovery will be denied.

### B.    Third-Party Removal

The Sprint defendants' contention that, as third-party defendants, they are entitled to remove under 28 U.S.C. § 1441(a), is not an argument that will detain the Court long.  It is well established that, consistent with the policy favoring narrow construction of the removal statutes, the class of "defendants" authorized to remove a case under Section 1441(a) does not include third-party defendants.  Simply put, "the substantial majority of the many judicial opinions that have dealt with the subject have consistently held that a third-party defendant cannot invoke removal jurisdiction at all – a view that is uniformly supported by the leading treatises on the subject[.]"  *Easton Fin. Corp. v. Allen*, 846 F. Supp. 652, 653 (N.D. Ill. 1994).  *See also Sturman v. Rush-Presbyterian-St. Luke's Med. Ctr.*, 128 F. Supp. 2d 1139, 1140 (N.D. Ill. 2001) (noting that "the large majority of federal courts . . . have consistently rejected removal proceedings sought to be instituted by . . . third-party defendants.").

"The limitations in [28 U.S.C. § 1441(a)] have been interpreted strictly by the federal

courts, who often speak of the right of removal being limited to 'true' defendants.  Thus, the plaintiffs cannot remove, even when they are in the position of a defendant with regard to a counterclaim asserted against them . . . . Nor can third-party defendants brought into the state action by the original defendant exercise the right of removal to the federal court[.]"  14C Wright, Miller, Cooper & Steinman, *Federal Practice & Procedure* § 3731 (collecting cases).  "[B]ecause subsection (a) [of Section 1441] . . . only allows a 'defendant' to remove a case and makes no express mention of 'third-party' defendants, the statute is strictly construed to preclude removal by third-party defendants."  *Starr v. Prairie Harbor Dev. Co.*, 900 F. Supp. 230, 232 (E.D. Wis. 1995).  The view that Section 1441(a) does not permit removal by third-party defendants is supported not only by the policy favoring narrow construction of the removal statutes but also by the familiar principle that the scope of federal jurisdiction on removal is to be construed with an eye to preserving a plaintiff's choice of a state-court forum.  The United States Court of Appeals for the Seventh Circuit has observed that "[t]o allow . . . a . . . third-party action . . . to govern jurisdiction would potentially defeat the plaintiff's choice of forum and 'radically expand the class of removable cases.'"  *Adkins v. Illinois Cent. R.R. Co.*, 326 F.3d 828, 836 (7th Cir. 2003) (quoting *Holmes Group, Inc. v. Vornado Air Circulation Sys., Inc.*, 535 U.S. 826, 832 (2002)).  As a sister court put it, removal by third-party defendants is "akin to the tail wagging the dog," because it permits defendants named in ancillary claims in a case to defeat the forum chosen by a plaintiff as to the main claims in the case.  *Lewis v. Windsor Door Co.*, 926 F.2d 729, 733 (8th Cir. 1991).

In light of these considerations, "it has long been settled that third-party defendants . . . cannot remove actions on their own" under 28 U.S.C. § 1441(a).  *Loyola Med. Practice Plan v. Tromiczak*, 10 F. Supp. 2d 943, 944 (N.D. Ill. 1998).  *See also Phillips v. Kladis*,

No. 97 C 2346, 1997 WL 428506, at *1 n.1 (N.D. Ill. July 25, 1997) ("As to section 1441(a), in short, a third-party defendant is not a 'defendant' within the meaning of that section, and is not entitled to remove."); *Association in Psychcare v. Ament*, No. 95 C 3732, 1995 WL 410982, at *1 n.1 (N.D. Ill. July 11, 1995) ("[T]hird-party defendants [cannot] remove under 28 U.S.C. § 1441(a) . . . , since . . . a third-party defendant is not a 'defendant' within the meaning of that section, and is thus not entitled to remove."); *F.H. Prince & Co. v. Towers Fin. Corp.*, No. 90 C 0951, 1990 WL 129494, at *2 (N.D. Ill. Aug. 31, 1990) ("[A] third-party defendant is not a defendant within the meaning of § 1441[.]"); *University of Chicago Hosp. & Med. Ctr. v. Rivers*, 701 F. Supp. 647, 650 (N.D. Ill. 1988) ("[S]ection 1441(a) . . . permits removal only by defendants . . . . The Court finds, therefore, that section[ ] 1441(a) . . . do[es] not permit removal by third-party defendants.").  *Accord First Nat'l Bank of Pulaski v. Curry*, 301 F.3d 456, 462-63 (6th Cir. 2002) ("[T]he phrase 'the defendant or the defendants,' as used in § 1441(a), [must] be interpreted narrowly, to refer to defendants in the traditional sense of parties against whom the plaintiff asserts claims."); *Sanford v. Premier Millwork & Lumber Co.*, 234 F. Supp. 2d 569, 571 (E.D. Va. 2002) ("[T]he majority rule, and . . . the better view, is that third-party defendants are not the true defendants in the first instance and are not, therefore, entitled to remove under § 1441(a)."); *BJB Co. v. Comp Air Leroi*, 148 F. Supp. 2d 751, 752 (N.D. Tex. 2001) (stating that "district courts throughout the country have . . . determined that third-party defendants are not defendants within the meaning of § 1441(a)[.]").  Thus, as a matter of law, the Sprint defendants have no right to remove this case under Section 1441(a).[6]

_____

6.      The Seventh Circuit Court of Appeals has left open the question of whether, in limited instances, a third-party defendant might be able to remove a case pursuant to 28 U.S.C. § 1441(c).  That subsection of the statute provides, "Whenever a separate and independent claim or

C.     **Fraudulent Misjoinder**

The Court turns next to the Sprint defendants' argument for removal based on the

doctrine of fraudulent joinder to defeat diversity jurisdiction.  In general, a court must disregard a

the citizenship of a non-diverse party that has been fraudulently joined for the purpose of defeating

federal jurisdiction.  *See Schwartz v. State Farm Mut. Auto. Ins. Co.*, 174 F.3d 875, 878 (7th Cir.

1999); *LaRoe v. Cassens & Sons, Inc.*, 472 F. Supp. 2d 1041, 1045 (S.D. Ill. 2006).  Under the

law of this Circuit, fraudulent joinder to defeat diversity jurisdiction occurs in two circumstances:

when a plaintiff joins as a defendant a non-diverse party against which "there is no possibility that

[the] plaintiff can state a cause of action . . . in state court"; or when "there has been outright fraud

--------

cause of action within the jurisdiction conferred by section 1331 of this title is joined with one or
more otherwise non-removable claims or causes of action, the entire case may be removed and the
district court may determine all issues therein, or, in its discretion, may remand all matters in which
State law predominates." 28 U.S.C. § 1441(c).  In *Thomas v. Shelton*, 740 F.2d 478 (7th Cir. 1984),
the court held that "in the broad run of third-party cases . . . the third-party defendant cannot remove
the case under section 1441(c)," although the court recognized the possibility that exceptions might
exist, particularly in cases involving the United States as a third-party defendant. *Id.* at 487.  Of
course, Section 1441(c) applies by its terms only to separate and independent claims that arise under
federal law.  The notice of removal in this case does not allege that any portion of this case arises
under federal law within the meaning of 28 U.S.C. § 1331, and it is much too late to amend the
notice of removal to do so now.  *See Alsup v. 3-Day Blinds, Inc.*, 435 F. Supp. 2d 838, 844 n.2
(S.D. Ill. 2006) (quoting 14C Wright, Miller, Cooper & Steinman, *Federal Practice &
Procedure* § 3733) ("A notice of removal may be amended more than thirty days after the time to
remove has expired 'only to set out more specifically the grounds for removal that already have been
stated, albeit imperfectly, in the original notice . . . . Completely new grounds for removal
jurisdiction may not be added and missing allegations may not be furnished, however.'").  The fact
that the Sprint defendants have asked the Court to order the Dennis defendants' third-party claims
into arbitration pursuant to the FAA is not a basis for the exercise of so-called "federal question"
jurisdiction under Section 1331.  *See Employer Trs. of Graphic Communications Int'l Union,
Local 1-B Health & Welfare Fund v. Union Trs. of Graphic Communications Int'l Union, Local 1-B
Health & Welfare Fund*, 428 F. Supp. 2d 997, 1002 (D. Minn. 2006); *Fisher v. MBNA Am. Bank,
N.A.*, 422 F. Supp. 2d 889, 894-95 (S.D. Ohio 2006); *Huffco Peak Med. Okla. No. 5, Inc. v. Collins*,
237 F. Supp. 2d 1287, 1289-90 (N.D. Okla. 2002); *Petroleum Corp. v. Transcontinental Gas Pipe
Line Corp.*, 681 F. Supp. 400, 401 (S.D. Tex. 1988).

in [the] plaintiff's pleading of jurisdictional facts" with respect to a non-diverse defendant. *McNichols v. Johnson & Johnson*, 461 F. Supp. 2d 736, 739 (S.D. Ill. 2006) (quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)).  In this instance, the Sprint defendants do not argue that any of the jurisdictional facts alleged in Sabo's complaint or the Dennis defendants' third-party complaint are false or that there is no possibility of success on those claims in Illinois state court.  Instead, the Sprint defendants argue that the misjoinder of Sabo's claims against the Dennis defendants with the latter's third-party claims against the Sprint defendants is tantamount to fraudulent joinder.[7]

        In addition to the two forms of fraudulent joinder recognized in this Circuit, the Eleventh Circuit has recognized a third, namely, "fraudulent misjoinder" or "procedural misjoinder."  A fraudulent misjoinder to defeat diversity occurs when the misjoinder of claims or parties in a case "is so egregious as to constitute fraudulent joinder."  *Rutherford v. Merck & Co.*, 428 F. Supp. 2d 842, 851 (S.D. Ill. 2006) (quoting *Tapscott v. MS Dealer Serv. Corp.*, 77 F.3d 1353, 1360 (11th Cir. 1996)).  The Seventh Circuit Court of Appeals has not addressed the validity

---

7.   To the extent the Sprint defendants couch this argument as one for a realignment of parties, the Court does not agree.  While a court can, in some instances, realign the parties to a case according to their true interests, use of realignment to manufacture federal subject matter jurisdiction is disfavored.  *See Jet Traders Inv. Corp. v. Tekair, Ltd.*, 89 F.R.D. 560, 567 (D. Del. 1981) ("This Court has been unable to find a single case where parties were realigned to create diversity.  Where courts have addressed this question in passing, they have indicated a belief that to do so would be improper.").  Also, in this Circuit the test of whether realignment of parties is proper is whether an "actual, substantial controversy exists between parties on one side of the dispute and their named opponents[.]"  *American Motorists Ins. Co. v. Trane Co.*, 657 F.2d 146, 149 (7th Cir. 1981).  *See also Maryland Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 621-24 (2d Cir. 1993); *Zurn Indus., Inc. v. Acton Constr. Co.*, 847 F.2d 234, 237-38 (5th Cir. 1988); *Farmers Alliance Mut. Ins. Co. v. Jones*, 570 F.2d 1384, 1387 (10th Cir. 1978); *Universal Underwriters Ins. Co. v. Wagner*, 367 F.2d 866, 870-71 (8th Cir. 1966).  In this case the Sprint defendants do not dispute the existence of the debt underlying Sabo's claim against the Dennis defendants or her right to maintain a suit thereon.

of the doctrine of fraudulent misjoinder to defeat diversity, although the doctrine has been addressed by other judges of this Court in decisions that the undersigned District Judge finds persuasive in this instance.    In particular, the Court is persuaded by the *Rutherford* decision, in which Chief District Judge Murphy declined to recognize the fraudulent misjoinder doctrine for a number of important reasons.

In *Rutherford*, Judge Murphy pointed out that the fraudulent misjoinder doctrine is contrary to settled judicial understanding of the scope of federal diversity jurisdiction on removal.   The *Rutherford* decision noted that the jurisprudence of the Supreme Court of the United States has never even hinted at the recognition of misjoinder of legally-viable, non-fraudulent claims under state law as a species of fraudulent joinder; the longstanding principle in the federal courts has been that questions of joinder, particularly under state rules of civil procedure, do not implicate federal subject matter jurisdiction.   *See* 428 F. Supp. 2d at 851.  The decision further noted the fact that the basis for the exercise of federal jurisdiction on removal is entirely statutory, thus implicating that the proper balance of power between federal courts and state courts mandates that the limits of federal jurisdiction to be narrowly construed.  In other words, any enlargements thereof must be undertaken by Congress, not the courts.    *Id*.   Finally, *Rutherford* surveyed case law attempting to apply the fraudulent misjoinder doctrine and observed that courts have struggled with the meaning and scope of this doctrine.    *See id*. at 852-54.[8]   The decision noted that the Seventh Circuit Court of Appeals has expressed a strong preference for jurisdictional rules that are

---

8.    In this connection, the *Rutherford* decision noted that of the federal courts that have adopted the fraudulent misjoinder doctrine, those courts that test fraudulent misjoinder under state procedural rules are likely upsetting the balance of federalism by needlessly inserting themselves into the judicial business of construing those rules, which is uniquely a matter of state concern.  *See* 428 F. Supp. 2d at 854-55 & n.2.

simple and easy to apply, to ensure consistency of results and to avoid waste of resources through erroneous rulings on threshold issues of jurisdiction. *See id*. at 852. The *Rutherford* decision opined that any jurisdictional principle based upon highly discretionary, fact-specific determinations about proper joinder of parties and claims in a given case is unlikely to meet this standard. *See id*. at 855. Accordingly, Judge Murphy declined to recognize the fraudulent misjoinder doctrine in the absence of further guidance offered by either the Supreme Court or the Seventh Circuit Court of Appeals. *See id*.

The Court agrees with the reasoning of *Rutherford*. The right of removal arises neither from the common law nor the Constitution and instead is wholly statutory. "This power of removal is not to be found in express terms in any part of the constitution; if it be given, it is only given by implication, as a power necessary and proper to carry into effect some express power." *Martin v. Hunter's Lessee*, 14 U.S. (1 Wheat.) 304, 349 (1816) (Story, J.). "[A]s Congress is not limited by the constitution to any particular mode, or time of exercising it, it may authorize a removal either before or after judgment. The time, the process, and the manner, must be subject to its absolute legislative control." *Id*. Since the basis for the exercise of federal jurisdiction on removal is statutory and entirely governed by the will of Congress, removal jurisdiction must be construed narrowly in favor of the jurisdiction of state courts. "The power reserved to the states under the Constitution to provide for the determination of controversies in their courts, may be restricted only by the action of Congress in conformity to the Judiciary Articles of the Constitution . . . . Due regard for the rightful independence of state governments, which should actuate federal courts, requires that they scrupulously confine their own jurisdiction to the precise limits which the statute has defined." *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S.

100, 108-09 (1941).

Because the federal courts "have only the power that is authorized by Article III of the Constitution and the statutes enacted by Congress pursuant thereto," *Bender v. Williamsport Area Sch. Dist.*, 475 U.S. 534, 541 (1986), then "the fair presumption is (not as with regard to a Court of general jurisdiction, that a cause is within its jurisdiction unless the contrary appears, but rather) that a cause is without its jurisdiction till the contrary appears." *Turner v. Bank of N. Am.*, 4 U.S. (4 Dall.) 8, 10 (1799).  In exercising their limited jurisdiction, federal courts have the authority to interpret jurisdictional statutes and to craft federal common law as need be, but this power is closely circumscribed by the presumption against the exercise of federal jurisdiction and in favor of the rightful jurisdiction of state courts.  *See Carden v. Arkoma Assocs.*, 494 U.S. 185, 197 (1990) (declining to hold that an unincorporated association is a "citizen" within the meaning of 28 U.S.C. § 1332 of the state under the law of which the association is organized, notwithstanding the fact that such a rule might serve the purpose of accommodating diversity jurisdiction to the changing realities of commercial organization:   "Such accommodation is not only performed more legitimately by Congress than by courts, but it is performed more intelligently by legislation than by interpretation of the statutory word 'citizen.'"); *Hoagland v. Sandberg, Phoenix & von Gontard, P.C.*, 385 F.3d 737, 741 (7th Cir. 2004) (declining to adopt a rule that the citizenship of a professional corporation is the citizenship of its shareholders unless the corporation is organized under a state business corporations act, as "such a rule would involve the courts in rewriting the diversity statute.").  *See also Kim Littlefield, DMD, P.C. v. Orthodontic Ctrs. of Ill., Inc.*, Civil No. 06-606-GPM, 2007 WL 273766, at *4 (S.D. Ill. Jan. 26, 2007) (quoting *Southern Pac. Co. v. Jensen*, 244 U.S. 205, 221 (1917) (Holmes, J., dissenting)) (in fashioning federal common

law, judges act "only interstitially; they are confined from molar to molecular motions.").

In sum, "[f]ederal courts . . . . possess only that power authorized by Constitution and statute, . . . which is not to be expanded by judicial decree[.]" *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). *See also American Fire & Cas Co. v. Finn*, 341 U.S. 6, 17 (1951) ("The jurisdiction of the federal courts is carefully guarded against expansion by judicial interpretation[.]").  Moreover, the fact that federal courts are courts of limited jurisdiction imposes special risks on litigants, especially litigants who choose to proceed in federal court where the grounds for federal subject matter jurisdiction are not clear, namely, that months and years of litigation may be in vain as a result of a jurisdictional error.  For this reason, where jurisdictional issues are concerned, "[c]ourts and litigants are best served by [a] bright-line rule." *Budinich v. Becton Dickinson & Co.*, 486 U.S. 196, 202 (1988).  *See also Lapides v. Board of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 621 (2002) (citing *Hanover Star Milling Co. v. Metcalf*, 240 U.S. 403, 426 (1916) (Holmes, J., concurring)) ("[J]urisdictional rules should be clear.").  The Seventh Circuit Court of Appeals has instructed,

> Functional approaches to legal questions are often, perhaps generally, preferable to mechanical rules; but the preference is reversed when it comes to jurisdiction.  When it is uncertain whether a case is within the jurisdiction of a particular court system, not only are the cost and complexity of litigation increased by the necessity of conducting an inquiry that will dispel the uncertainty but the parties will often find themselves having to start their litigation over from the beginning, perhaps after it has gone all the way through to judgment.  "Jurisdictional rules ought to be simple and precise so that judges and lawyers are spared having to litigate over not the merits of a legal dispute but where and when those merits shall be litigated."

*Hoagland*, 385 F.3d at 739-40 (quoting *In re Lopez*, 116 F.3d 1191, 1194 (7th Cir. 1997)).  *See also Jerome B. Grubart, Inc. v. Great Lakes Dredge & Dock Co.*, 513 U.S. 527, 549 (1995) (Thomas, J., concurring) ("Vague and obscure [jurisdictional] rules may permit judicial power to reach beyond

its constitutional and statutory limits, or they may discourage judges from hearing disputes properly before them.  Such rules waste judges' and litigants' resources better spent on the merits[.]'").

The Court concludes that the decision to enlarge the scope of federal diversity jurisdiction on removal through the adoption of the fraudulent misjoinder doctrine is one for Congress to make.  The Court concludes further that the doctrine is neither simple nor easy to apply. For this reason, it is unlikely to promote consistent results or conservation of the resources of courts and parties.   Accordingly, the undersigned District Judge aligns himself with numerous previous decisions by other judges of the Court in declining to recognize the fraudulent misjoinder doctrine.  *See Sanders v. Merck & Co.*, Civil No. 07-64-GPM, 2007 WL 924497, at **6-7 (S.D. Ill. Mar. 27, 2007); *Vogel v. Merck & Co.*, 476 F. Supp. 2d 996, 1002, 1005-06 (S.D. Ill. 2007); *Hardaway v. Merck & Co.*, Civil No. 06-465-GPM, 2006 WL 2349965, at *3 (S.D. Ill. Aug. 11, 2006); *Bavone v. Eli Lilly & Co.*, Civil No. 06-153-GPM, 2006 WL 1096280, at **2-5 (S.D. Ill. Apr. 25, 2006); *Riddle v. Merck & Co.*, Civil No. 06-172-GPM, 2006 WL 1064070, at **6-8 (S.D. Ill. Apr. 21, 2006); *Rutherford*, 428 F. Supp. 2d at 850-55; *Rabe v. Merck & Co.*, No. Civ. 05-363-GPM, Civ. 05-378-GPM, 2005 WL 2094741, at *2 (S.D. Ill. Aug. 25, 2005).  *See also Alegre v. Aguayo*, No. 06 C 5744, 2007 WL 141891, at **5-6 (N.D. Ill. Jan. 17, 2007); *Bird v. Carteret Mortgage Group*, No. 2:06-cv-0588, 2007 WL 43551, at *5 (S.D. Ohio Jan. 5, 2007); *Leif's Auto Collision Ctrs. v. Progressive Halcyon Ins. Co.*, Civil No. 05-1958-PK, 2006 WL 2054552, at *3 (D. Or. July 21, 2006); *Bryan v. Lexington Ins. Co.*, No. CA 06-0225-C, 2006 WL 2052524, at *8 n.8 (S.D. Ala. July 20, 2006); *A. Kraus & Son v. Benjamin Moore & Co.*, No. CV 05-5487(ARR)(VVP), 2006 WL 1582193, at *5 (E.D.N.Y. June 7, 2006);

*Osborn v. Metropolitan Life Ins. Co.*, 341 F. Supp. 2d 1123, 1127-28 (C.D. Cal. 2004). The Court rejects the Sprint defendants' argument for the exercise of federal jurisdiction based upon the fraudulent misjoinder doctrine.[9]

### D.   Collusive Joinder

As a final matter, the Court addresses the Sprint defendants' argument that the joinder of Sabo's claims against the Dennis defendants with the latter's third-party claims against the Sprint defendants is improper under 28 U.S.C. § 1359. That statute provides, "A district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court." 28 U.S.C. § 1359. The general policy underlying the statute is to avoid unnecessary federal interference in matters of state concern by ensuring that federal courts do not entertain cases in which parties have contrived federal subject matter jurisdiction. "Federal courts are bound to be especially cautious in the exercise of their diversity jurisdiction, which because of its concurrent nature in matters involving questions of state law, creates a peculiar risk that the proper boundaries

---

9.   The Court notes in passing that it agrees with the Sprint defendants that the Dennis defendants' third-party claims are not properly joined with Sabo's claims. Under 735 ILL. COMP. STAT. 5/2-614, which governs third-party practice in Illinois state court, a third-party plaintiff may not bring claims that are independent of the main claims in a case. "Only those claims [on] which a third-party defendant is or may be liable to the original defendant for all or part of the plaintiff's claims against him are proper under third-party proceedings." *Ketcham v. Consolidated Rail Corp.*, 496 N.E.2d 1104, 1107 (Ill. App. Ct. 1986). In other words, "[a] third party complaint must state a cause of action and disclose some relationship upon which a duty to indemnify may be predicated." *Import Sales, Inc. v. Continental Bearings Corp.*, 577 N.E.2d 1205, 1214 (Ill. App. Ct. 1991). "[T]hird-party practice . . . can not be used to maintain an entirely separate and independent claim against a third party, even if it arises out of the same general set of facts as the main claim." *Filipponio v. Bailitz*, 392 N.E.2d 23, 26 (Ill. App. Ct. 1978). However, the misjoinder of the Dennis defendants' third-party claims with Sabo's claims is a matter for the state court, not this Court, to resolve.

of judicial power will be overlooked." *Dougherty v. Oberg*, 297 F. Supp. 635, 636-37 (D. Minn. 1969).   More particularly, Section 1359 "is aimed at preventing parties from manufacturing diversity jurisdiction to inappropriately channel ordinary business litigation into the federal courts." *Amoco Rocmount Co. v. Anschutz Corp.*, 7 F.3d 909, 916 (10th Cir. 1993) (quoting *Yokeno v. Mafnas*, 973 F.2d 803, 809 (9th Cir. 1992)).

Courts refer to 28 U.S.C. § 1359 as the "anti-assignment" statute occasionally because a common sort of device for manufacturing federal jurisdiction that the statute prohibits is a collusive assignment or partial assignment of a claim for the purpose of bringing the claim within diversity jurisdiction.  *See, e.g., Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 826-30 (1969) (in an action by a Texas resident against a Haitian corporation to recover the amount allegedly due under a contract for the sale of the stock of a Panama corporation, holding that an assignment of five percent of the Panama corporation's interest under the contract to the Texas resident for consideration of $1 was improperly or collusively made within the meaning of Section 1359 for the purpose of manufacturing federal alienage diversity jurisdiction).  "Assignments designed to confer diversity jurisdiction, normally for purposes of facilitating the collection of a debt, are collusive and ineffective." *Hartford Accident & Indem. Co. v. Sullivan*, 846 F.2d 377, 382 (7th Cir. 1988). *See also Spartech Corp. v. Opper*, 890 F.2d 949, 954 (7th Cir. 1989) ("28 U.S.C. § 1359 . . . makes assignments intended to confer federal jurisdiction ineffectual for that purpose.").  *Accord Nolan v. Boeing Co.*, 919 F.2d 1058, 1067 (5th Cir. 1990) ("The purpose of the statute is to prevent the manipulation of jurisdictional facts where none existed before – for example, through collusive assignments from a non-diverse party to a diverse party.").

As the plain language of 28 U.S.C. § 1359 makes clear, the statute applies only to

Page 20 of  26

devices that are intended to invoke federal jurisdiction.  The Seventh Circuit Court of Appeals has recognized that "[d]evices to create federal jurisdiction have historically been limited by the statute[.]"  *Betar v. De Havilland Aircraft of Canada, Ltd.*, 603 F.2d 30, 33 (7th Cir. 1979).  By contrast, "devices to defeat jurisdiction have not."  *Id.  See also Illinois v. Hunt Int'l Res. Corp.*, 481 F. Supp. 71, 74 (N.D. Ill. 1979) (naming a class representative for the purpose of defeating federal jurisdiction does not violate Section 1359).  The statute "prohibit[s] collusive creation of federal jurisdiction, but not . . . collusive destruction of jurisdiction."  *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 72 (7th Cir. 1992).  *See also Pallazola v. Rucker*, 797 F.2d 1116, 1120 (1st Cir. 1986) (quoting *McSparran v. Weist*, 402 F.2d 867, 875 (3d Cir. 1968)) ("Section 1359, as its language clearly shows, expresses a policy against the creation of federal jurisdiction and not against its avoidance."); *Messer v. American Gems, Inc.*, 612 F.2d 1367, 1375 (4th Cir. 1980) ("28 U.S.C. § 1359 attaches no consequences to steps taken to *defeat* diversity jurisdiction.") (emphasis in original); *Herrick v. Pioneer Gas Prods. Co.*, 429 F. Supp. 80, 84 (W.D. Okla. 1976) ("28 U.S.C. § 1359 relates only to the improper creation, not the destruction, of federal diversity jurisdiction[.]").

In fact, because 28 U.S.C. § 1359 does not apply to devices to defeat federal jurisdiction, a party seeking removal to federal court thereby loses the right to invoke the statute.  For removing parties, "reliance upon 28 U.S.C. § 1359 is entirely misplaced.  That section, which provides that '[a] district court shall not have jurisdiction of a civil action in which any party, by assignment or otherwise, has been improperly or collusively made or joined to invoke the jurisdiction of such court' cannot be availed of by a defendant who, by his own action in removing a case from state to federal court, has thereby invoked the jurisdiction of the federal court."  *Weniger v. Union Ctr. Plaza Assocs.*, 387 F. Supp. 849, 857 n.4 (S.D.N.Y. 1974).  *See also Long &*

*Foster Real Estate, Inc. v. NRT Mid-Atlantic, Inc.*, 357 F. Supp. 2d 911, 923 n.28 (E.D. Va. 2005) ("§ 1359 does not apply where a defendant has invoked federal jurisdiction by removing a case from state to federal court."); *Arant v. Stover*, 307 F. Supp. 144, 149 (D.S.C. 1969) (Section 1359's prohibition of the use of artificially-created diversity to bring into federal court a local action normally triable in state court does not apply to the removal of a case from federal court to state court). *Cf. Lisenby v. Patz*, 130 F. Supp. 670, 675 (D.S.C. 1955) (Section 1359 does not prevent a plaintiff-assignee from instituting an action in state court to prevent removal to a federal court).  In this case, even if, as the Sprint defendants argue, Sabo and the Dennis defendants have colluded to defeat federal jurisdiction, this is not improper under Section 1359.  The Court concludes that this case is due to be remanded to state court.

Although the joinder of the claims in this case clearly is not collusive within the meaning of 28 U.S.C. § 1359, the Court wishes to emphasize that it is aware of the pronounced odor of fish that permeates these proceedings.  The fact that Sabo's complaint and the Dennis defendants' answer and third-party complaint were filed in state court within hours of one another is a striking coincidence.  The fact that the Dennis defendants are the parties who have moved for remand of this case to state court and who have argued the most vigorously against the exercise of federal jurisdiction is extremely unusual, in the Court's experience, and suggests strongly that, with respect to the matter of the forum of this case at least, Sabo and the Dennis defendants are not in a perfectly adversarial posture.  However, it well settled that "plaintiffs as masters of the complaint may include (or omit) claims or parties in order to determine the forum," and, in the absence of fraudulent joinder to defeat diversity, which has not been proven here, the Court will not inquire further into the circumstances underlying the joinder of claims in this case.  *Garbie v. DaimlerChrysler Corp.*, 211

F.3d 407, 410 (7th Cir. 2000).  *See also Boyer v. Snap-on Tools Corp.*, 913 F.2d 108, 110 (3d Cir. 1990) (noting that, although a plaintiff's decisions regarding joinder of parties "may have repercussions for purposes of diversity jurisdiction, there is no reason for a court to interfere with this inevitable consequence of a plaintiff's election" in the absence of collusive joinder within the meaning of Section 1359 or fraudulent joinder to defeat diversity).

Because of the rulings this Court is asked to make the Court is compelled to remark that it is troubled  by the circumstances surrounding the issuance of the preliminary injunction against the Sprint defendants in state court before removal.  It appears from the record that at the time the injunction was entered the Sprint defendants had not received anything approximating proper service of process under Illinois law.  "If a party is not properly served with summons, the trial court does not obtain personal jurisdiction over that party."  *In re Marriage of Schmitt*, 747 N.E.2d 524, 530 (Ill. App. Ct. 2001) (citing *DiNardo v. Lamela*, 539 N.E.2d 1306, 1308 (Ill. App. Ct. 1989)).  Correspondingly, an injunction entered where service of process has not been effected in accordance with the Illinois Code of Civil Procedure "is void *ab initio* and subject to direct or collateral attack at any time."  *Id*.  In light of the state court's lack of personal jurisdiction over the Sprint defendants when the preliminary injunction issued, they cannot be held in contempt for violation of the injunction, as the Dennis defendants suggest.  *See Cooper v. Rockford Newspapers, Inc.*, 365 N.E.2d 746, 748 (Ill. App. Ct. 1977) (an injunction entered by a court without personal jurisdiction is "void" and cannot support a contempt order).

It appears also from the record that the injunction was issued without adequate notice to the Sprint defendants, *see* 735 ILCS 5/11-102; *Electronic Design & Mfg. Inc. v. Konopka*, 649 N.E.2d 619, 624 (Ill. App. Ct. 1995), without security, *see* 735 ILCS 5/11-103; *DuPage County v.*

*Robinette*, 221 N.E.2d 769, 771 (Ill. App. Ct. 1966), and without a reasonable likelihood of the Dennis defendants' success on the merits on their third-party claims.  *See Filter Dynamics Int'l, Inc. v. Astron Battery, Inc.*, 311 N.E.2d 386, 401 (Ill. App. Ct. 1974); *House of Vision, Inc. v. Hiyane*, 208 N.E.2d 390, 394 (Ill. App. Ct. 1965).  Although it will be up to the state court on remand to ultimately decide the issue of the arbitrability of the third-party claims in this case, it is clear from the record that those claims are subject to a valid arbitration agreement that the state court is bound to enforce.  *See Borowiec v. Gateway 2000, Inc.*, 808 N.E.2d 957, 962 (Ill. 2004) (noting that the purpose of the FAA is "to reverse the longstanding judicial hostility to arbitration agreements that had existed at English common law and had been adopted by American courts, and to place arbitration agreements upon the same footing as other contracts," and that the FAA "reflects a . . . liberal federal policy favoring arbitration agreements."); *Ragan v. AT & T Corp.*, 824 N.E.2d 1183, 1187-97 (Ill. App. Ct. 2005) (reversing a trial court's refusal to enforce an arbitration agreement).

        The Sprint defendants obviously did nothing to help unravel the procedural knots in this case by removing the case, rather than seeking relief from the injunction and an order compelling arbitration in the correct forum, the state court.  Were the removal in this instance based solely on the Sprint defendants' arguments that third-party defendants are "defendants" entitled to remove under 28 U.S.C. § 1441(a) and that the joinder of claims in this case is collusive in violation of 28 U.S.C. § 1359, the Court very likely would hold that the removal was objectively unreasonable so as to warrant an award of costs and expenses, including attorney fees, under 28 U.S.C. § 1447(c).  *See Hauck v. ConocoPhillips Co.*, Civil No. 06-135-GPM, 2006 WL 1596826, at *10 (S.D. Ill. June 6, 2006) (costs and expenses may be awarded under Section 1447(c) where a

removal lacks an objectively reasonable basis); *Orbitz, LLC v. Worldspan, L.P.*, 425 F. Supp. 2d 929, 933 (N.D. Ill. 2006) (same); *Impact Gel Corp. v. Rodeen*, No. 05-C-223-C, 2005 WL 3555422, at *2 (W.D. Wis. Dec. 27, 2005) (same).  However, the Seventh Circuit Court of Appeals clarified recently that the test of objective reasonableness of removal is similar to the test of qualified immunity in the context of civil rights cases, namely, a removal will be deemed objectively unreasonable only if it violates "clearly established" law.  *Lott v. Pfizer, Inc.*, No. 06-3372, 2007 WL 1804261, at *3 (7th Cir. June 25, 2007).  *Cf. Cunningham v. Snyder*, 472 F. Supp. 2d 1023, 1026 (S.D. Ill. 2006) (discussing the general rule that governmental officials are entitled to qualified immunity for harm caused by official acts that do not violate clearly established constitutional norms).  Importantly, "[d]istrict court decisions . . . do not render the law clearly established." *Lott*, 2007 WL 1804261, at *3.  Thus, although this Court has issued a number of prior decisions declining to recognize the fraudulent misjoinder doctrine, because the validity of the doctrine has not been authoritatively resolved in this Circuit, the Court, in its discretion, will decline to impose costs and expenses upon the Sprint defendants pursuant to Section 1447(c).  *See Brooks*, 443 F. Supp. 2d at 1006; *Hauck*, 2006 WL 1596826, at *10.

### III. Conclusion

The Sprint defendants' motion for leave to conduct jurisdictional discovery (Doc. 15) is **DENIED**.  The Dennis defendants' motion for remand to state court (Doc. 13) is **GRANTED**, and pursuant to 28 U.S.C. § 1447(c) this action is **REMANDED** to the Circuit Court of the Third Judicial Circuit, Madison County, Illinois, for lack of subject matter jurisdiction.  All other pending motions in this cause (Docs. 4, 5, 18) are **DENIED as moot**.  The Clerk of the Court is hereby directed to close the case file for this matter.

**IT IS SO ORDERED.**

Signed this 2nd day of July, 2007.

/s/        David  RHerndon
**United States District Judge**